UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ONEWOO CORPORATION and
V.J.ONE CORPORATION,

                    Plaintiffs,               Case No. 1:16-cv-4623

      -against-                   **COMPLAINT**

HAMPSHIRE BRANDS, INC.,
HAMPSHIRE GROUP, LIMITED,
PAUL BUXBAUM and WILLIAM        **JURY TRIAL DEMANDED**
DROZDOWSKI,

                    Defendants.
-----------------------------------------------------x

      Plaintiffs Onewoo Corporation and V.J.One Corporation, as and for their complaint

against the Defendants, allege as follows:

## NATURE OF THE ACTION

      1.      This is an action for non-payment for merchandise Defendants ordered from

Plaintiffs worth approximately $4.5 million, as well as for fraudulent misrepresentations made by

Defendants.

## PARTIES

      2.      Plaintiff Onewoo Corporation ("Onewoo") is a Korean corporation, with its

principal place of business in Seoul, Korea.

      3.      Plaintiff V.J.One Corporation ("VJOne") is a Korean corporation, with its

principal place of business in Seoul, Korea.

      4.      Upon information and belief, defendant Hampshire Brands, Inc. ("Hampshire

Brands") is a Delaware corporation with its principal place of business at 114 West 41st Street,

New York, New York.

5.      Upon information and belief, defendant Hampshire Group, Limited ("Hampshire Group") is a Delaware corporation with its principal place of business at 114 West 41st Street, New York, New York.

6.      Upon information and belief, Hampshire Brands is a wholly-owned and controlled subsidiary of Hampshire Group.  Hampshire Brands and Hampshire Group are collectively referred to herein as "Hampshire".

7.      Upon information and belief, defendant Paul Buxbaum ("Buxbaum") is a resident of the State of California, and has an actual place of business at 114 West 41st Street, New York, New York.

8.      Upon information and belief, defendant William Drozdowski ("Drozdowski") is a resident of the State of New Jersey, and has an actual place of business at 114 West 41st Street, New York, New York.

## JURISDICTION AND VENUE

9.      This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different countries and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      Venue is proper pursuant to 28 U.S.C. § 1391(b) as defendants Hampshire Brands and Hampshire Group reside within this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

11.      Plaintiffs manufacture and export clothing.

12.      Hampshire, according to its website, "is a provider of fashion apparel across a broad range of product categories … specializ[ing] in designing and marketing men's sportswear

to department stores, chain stores and mass market retailers under licensed brands…." Hampshire's brands include Dockers® shirts and bottoms.

13.     Buxbaum is Hampshire's Chairman, President and Chief Executive Officer.  In that capacity, Buxbaum oversaw and controlled all significant activities of Hampshire.  In particular, Buxbaum, whose background is primarily focused in corporate turnaround and liquidations, had direct involvement and knowledge of all of Hampshire's agreements, negotiations, and material representations with the Hampshire's banks, financing companies, vendors, and creditors.

14.     Drozdowski is, and was at all relevant times, Hampshire's interim Chief Financial Officer.  He was brought into the company by Buxbaum because of his own background in corporate turnaround and liquidations.  Like Buxbaum, Drozdowski had direct involvement and knowledge of all of Hampshire's agreements, negotiations, and material representations with the Hampshire's banks, financing companies, vendors, and creditors.

15.     During 2015 and 2016, Hampshire placed a number of orders with Plaintiffs for shirts and pants.

16.     Based upon those orders, Plaintiffs manufactured and delivered to Hampshire, between December 2015 through June 2016, over 500,000 units of merchandise in accordance with Hampshire's purchase orders, for which Hampshire had agreed to pay Plaintiffs in excess of $4,500,000.

17.     Hampshire acknowledged receipt of the merchandise and raised no issues regarding its quality or conformity with the Hampshire's purchase orders.

18.     Rather, Hampshire agreed that they owed the payment to Plaintiffs.

19.     During late 2015 to June 2016, Plaintiffs had numerous conversations, emails and meetings with various representatives of Hampshire concerning Hampshire's financial status, including Hampshire's Director of Asian Operations, Blair Lewis, as well as Hampshire Group's CEO, "Buxbaum", and CFO, Drozdowski, and others.

20.     During these conversations, Hampshire repeatedly represented that it was obtaining financing that would allow it to make payment to Plaintiffs and asked Plaintiffs to continue shipments of the merchandise.

21.     For example, in an email to Plaintiffs from Hampshire's CFO, Bill Drozdowski, dated March 30, 2016, Mr. Drozdowski represented that "Hampshire is well aware of the situation of arrears payments.  Hampshire plans to close on it [sic] financing within the next 10 business days…. We are sorry for this temporary inconvenience, and want to ensure our relationship going forward.  If there is anything that can be done to get the shipment through would be appreciated."

22.     In an email dated April 6, 2016, Hampshire's Brian Young, copying Blair Lewis, informed Plaintiffs that, "I had a long talk with Paul [Buxbaum] and Blair [Lewis] last night…. Paul will close with the new finance Company later this month."

23.     In an email dated May 11, 2016, Hampshire's Blair Lewis informed Plaintiffs that "I am pleased to inform you that the Financial Agreement was signed on Monday.  There are just a few points to be finalized and we will be in a position to repay the outstanding money we owe you…. Our plan is to start the payments by the end of this month."

24.     On May 18, 2016, Plaintiff's D.I. Heo was scheduled to meet with Buxbaum and Drozdowski at Hampshire's offices in New York.  At that meeting, Buxbaum could not meet

because of a personal matter, but Drozdowski confirmed that Hampshire would make a payment by the last week of May 2016.

25.     Based on these representations, Plaintiffs manufactured and delivered merchandise to Plaintiffs.

26.     However, Hampshire never made the promised payment.

## FIRST CAUSE OF ACTION
### (Breach of Contract)
### (Against Hampshire)

27.     Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

28.     Hampshire placed orders with Plaintiffs for the manufacture of shirts and pants, and agreed to make payment upon delivery.

29.     Plaintiffs manufactured and delivered that merchandise in accordance with Hampshire's purchase orders.

30.     Hampshire accepted delivery of that merchandise, but failed to make payment.

31.     Accordingly, Hampshire is liable to Plaintiffs for an amount to be proven at trial, but not less than $4,522,780.33.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)
### (Against Hampshire)

32.     Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

33.     Plaintiffs manufactured and delivered the merchandise ordered by Hampshire with the reasonable expectation that Hampshire would pay for that merchandise.

34.     Hampshire accepted the merchandise knowing that Plaintiffs reasonably expected to be paid.

35.     By receiving the merchandise from Plaintiffs without making payment,

Hampshire was enriched at Plaintiffs' expense.

36.     It is against equity and good conscience to permit Hampshire to retain and enjoy

the benefits of the merchandise it received but failed to pay for.

37.     Accordingly, Hampshire is liable to Plaintiffs in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**(Promissory Estoppel)**
**(Against Hampshire)**

38.     Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

39.     Hampshire clearly and unambiguously promised to pay Plaintiffs for the

merchandise that Plaintiffs manufactured and delivered to Hampshire.

40.     Plaintiffs reasonably and foreseeably relied upon Hampshire's promise by

manufacturing and delivering merchandise.

41.     Hampshire has failed to pay for the merchandise in disregard of their promises,

despite repeated demands by Plaintiffs.

42.     Accordingly, Hampshire is liable to Plaintiffs in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
**(Price of Goods Sold and Delivered, Pursuant to U.C.C. § 2-709)**
**(Against Hampshire)**

43.     Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

44.     Plaintiffs are merchants generally engaged in the business of selling or

contracting to sell goods.

45.     Defendants are merchants who are engaged in the business of, *inter alia*, buying

or contracting to buy goods.

46.     Between December 2015 to June 2016, Plaintiffs sold and delivered to Hampshire, in accordance with Hampshire's directions, over 500,000 units of merchandise.

47.     Hampshire accepted that merchandise, but failed to pay the price for the merchandise as it became due.

48.     Accordingly, Hampshire is liable to Plaintiffs for the price of the merchandise accepted, together with incidental damages, in an amount to be proven at trial, but not less than $4,522,780.33.

**FIFTH CAUSE OF ACTION**
**(Account Stated)**
**(Against Hampshire)**

49.     Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

50.     Plaintiffs rendered invoices to Hampshire totaling $4,522,780.33 upon delivery of the merchandise.

51.     Hampshire made no objection to the invoices, which remain outstanding.

52.     An account stated has been created.

53.     Accordingly, Hampshire is liable to Plaintiffs for the sum of $4,522,780.33.

**SIXTH CAUSE OF ACTION**
**(Fraud)**
**(Against All Defendants)**

54.     Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

55.     Defendants repeatedly represented to Plaintiffs that they had the financial ability to pay Plaintiffs for the merchandise Plaintiffs delivered.

56.     Indeed, in their emails of April 6, 2016 and May 11, 2016, Hampshire's Brian Young and Blair Lewis represented that Hampshire had closed a financing agreement that

allowed Hampshire to make payment to Plaintiffs and indicated that payment would be made by the end of May.

57.     Drozdowski, Hampshire's CFO restated and confirmed this representation in his May 18, 2016 meeting with Mr. Heo.

58.     In an email dated June 13, 2016, Blair Lewis indicated, "I am pushing Paul [Buxbaum] and Bill [Drozdowski] all the time, however I am getting the same answers – That they are working on this with their financiers."

59.     However, these representations were false and Defendants knew them to be false at the time they were made.

60.     Despite their representations to the contrary, Hampshire had not obtained the financing necessary to pay Plaintiffs for the merchandise delivered.

61.     Rather, Hampshire had the motive and opportunity to commit fraud in that they were actively using the purported financing to induce Plaintiffs to continue merchandise deliveries.

62.     Thus, in an email to Plaintiffs dated May 11, 2016, Hampshire's Blair Lewis stated, "In light of my earlier email to you regarding our financial agreement being signed and forth coming payment schedule.  Will you ship the following goods as per our standard payment terms and not DDP [i.e., Delivered Duty Paid]."

63.     Blair Lewis's June 13, 2016 email confirmed the falsity of Defendants' representations, made just weeks before, that they had secured the financing to make payment to Plaintiffs.

64.     Plaintiffs, however, relied on Defendants' representations in communications with Plaintiffs' bank in order to secure necessary financing for Plaintiffs' own operations and in continuing to manufacture and deliver merchandise to Hampshire.

65.     Hampshire, thus, directly benefitted from their misrepresentations when they knew that their representations regarding their financing were false, as they had access to any communications with and documentation from their putative lender.

66.     Buxbaum and Drozdowski, Hampshire's top corporate officers, who were brought in because of their background in corporate turnaround and liquidation and spearheaded Hampshire's efforts to keep creditors such as Plaintiffs at bay, directly participated in and had knowledge of the fraudulent misrepresentations.

67.     Indeed, in the May 18 meeting scheduled with Buxbaum and Drozdowski, Drozdowski personally misrepresented facts regarding Hampshire's financing and timing of payment to Plaintiffs in order to induce further cooperation.

68.     Blair Lewis' emails of April 28, 2016 that "I have been pushing Paul and Bill on our commitments to you for 3 equal payments from end [sic] May to end [sic] July" and June 13, 2016 confirm that Buxbaum and Drozdowski both were aware of and were overseeing and orchestrating Hampshire's misrepresentations on Plaintiffs.

69.     Having relied on Defendants' misrepresentations, Plaintiffs were damaged by continuing to incur substantial costs in the manufacture and delivery of merchandise to Hampshire.

70.     Accordingly, Hampshire is liable to Plaintiffs in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendants awarding damages in amount to be proven at trial, but not less than $4,522,780.33, plus incidental damages, together with costs, disbursements, pre-and post-judgment interest, reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
       June 17, 2016

HUR & LASH, LLP


By:  /s/ Robert L. Lash
       Robert L. Lash
       Scott K. Hur
       *Attorneys for Plaintiffs*
       390 Fifth Avenue, Suite 900
       New York, NY 10018
       T: (212) 468-5590
       F: (212) 468-6699
       rlash@hlnylaw.com
       shur@hlnylaw.com